**Billy E. PARKER, Respondent,**

v.

**Stephanie A. PARKER, Appellant.**

**No. WD 59272.**

Missouri Court of Appeals,
Western District.

Submitted Oct. 3, 2001.
Decided Feb. 13, 2002.

William E. Erdich, St. Joseph, for appellant.

Michele C. Puckett, Cameron, for respondent.

Before JAMES M. SMART, JR., HAROLD L. LOWENSTEIN, and JOSEPH M. ELLIS, JJ.

PER CURIAM.

Stephanie Parker ("Mother") appeals the trial court's judgment of July 14, 2000, granting a motion to modify the couple's dissolution decree with regard to a change in child custody brought by her former husband, Billy Parker ("Father"). After a hearing on the matter, the Honorable Kenneth R. Lewis of Daviess County, ordered that the physical custody of the couple's child be transferred from Mother to Father, that Mother pay child support, and that Mother's visitation with her daughter be supervised.

### Factual Background

The parties were married on February 14, 1991, and a daughter was born to the marriage on July 10, 1996. On April 8, 1999, the parties' marriage was dissolved by a dissolution of marriage decree issued by the Honorable Stephen K. Griffin. That decree granted the parties joint legal custody of their daughter, and awarded physical custody to Mother, with reasonable and specific visitation rights to Father, pursuant to a detailed parenting plan. The court ordered Father to pay $230.00

per month in child support and to provide health insurance for the child. About a month after the decree was entered, Father was injured on his job and was unable to work. He began to receive worker's compensation benefits about a month and a half after the injury, and went back to work about eight months later, in January, 2000. By February, 2000, when Father filed a motion to modify custody, he was about six months behind in child support. Father claimed in his motion that there had been a "substantial change in circumstances" that warranted a change in the custody arrangements provided for in the original decree. Those changed circumstances were:

- that the child had head lice;
- that the child is "dirty, smells, has dirty clothes," and is in an unhealthy condition while in Mother's care;
- that Mother's residence lacks heat and running water;
- that Mother has neglected the child's health by not providing proper medical care;
- that the child has hearing problems that have gone undiagnosed and untreated while in Mother's care;
- that Mother continues to consume alcohol after completing an alcohol treatment program;
- that Mother takes the child to improper environments, such as pool halls and bars; and
- that Mother fails to keep Father informed concerning the child's health, education and general welfare; and
- that Mother is unemployed.

Father's motion to modify asked the court to grant the legal care, custody and control of the child to Father, subject to reasonable rights of visitation to Mother, and asked for child support and to receive the child tax credit and deductions for income tax purposes.

Father's attorney at that time, John Young, filed a request for a change of judge along with the motion to modify. On April 10, 2000, attorney Michele Puckett entered her appearance on behalf of Father. Father's new attorney was unaware of the request for change of judge, and as a result, the motion for change of judge was never noticed up for action or presented to the court. On April 20, 2000, at a hearing to set the trial date, the child's guardian ad litem and Father's new counsel appeared, but Mother's counsel did not appear. When the Judge Lewis attempted to have an associate circuit judge appointed, Father's counsel informed the judge that Mother's counsel did not want an associate circuit judge appointed to the case. The matter of reassigning the case to an associate circuit judge or any other judge was thus dropped with the approval of Father's attorney. By the time of trial in July, 2000, Father brought his child support current.

After a trial, the court found that since the date of the original decree, there had been "changed circumstances that are substantial and continuing," without specifying the particular circumstances warranting a change in custody. In the July 14, 2000 judgment, the trial court found:

(1) The Court has jurisdiction over the parties and subject matter herein.

(2) That the marriage of the parties was dissolved on the 8th day of April, 1999 with the joint legal custody of the parties['] minor child, to-wit: Shannel Nicole Parker, born July 10, 1996, being awarded to the parties, and Respondent (sic) awarded specific rights of visitation with the minor child as approved by the Court and set forth in the findings.

(3) That since the date of the original Decree, there have been changed cir-

cumstances that are substantial and continuing.

The judgment ordered, *inter alia*, that Father be granted legal and actual custody of the child; that Mother be allowed only supervised visitation, not in her home nor overnight; that both parties must give notice of any proposed relocation; that Father continue to provide medical insurance for the child; that Mother pay child support for the child; and that all other provisions of the April 8, 1999, decree of dissolution of marriage remain fully in effect.

Mother filed a motion to reopen or for new trial along with a motion to set aside for lack of jurisdiction on August 11, 2000. The motion to set aside stated that there was still pending a motion for change of judge, which had been filed when the motion to modify was filed. It stated, further, that the filing of the request for change of judge divests the judge of any jurisdiction except to grant the motion, even though no notice was filed to set a hearing date for the change of judge application. A hearing on the motion to set aside for lack of jurisdiction was held on August 17, 2000, at which time the motion to set aside was denied. Mother did not call up her motion to reopen or for new trial. Mother now appeals the trial court's judgment granting Father's motion to modify as to child custody.

## Standard of Review

■ The correct standard of review for a modification of a dissolution decree is the same as in any other court-tried case. *Lueckenotte v. Lueckenotte*, 34 S.W.3d 387, 397 (Mo. banc 2001). That standard is found in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976), wherein the court stated: "[T]he judgment of the trial court will be affirmed on appeal unless no substantial evidence supports it, it is against the weight of the evidence, it erroneously

declares the law, or it erroneously applies the law." *Lueckenotte*, 34 S.W.3d at 397.

## Point I: Lack of Jurisdiction

■ As her first point on appeal, Mother concentrates on the fact that because there was a motion filed requesting a change of judge in the matter, even though that motion was never noticed up nor ruled upon, the trial court was without jurisdiction to hear the case. She asserts that the trial court erred in denying her motion to set aside for lack of jurisdiction because the motion for a change of judge had been timely filed and was on record, thereby divesting the court of jurisdiction to act in the matter except to grant the motion. Mother asserts that the original motion for change of judge was properly filed because it was timely and because the original judge in the dissolution case was not the judge to whom the modification was assigned, thereby making it an "independent civil action" under the Rule.

On August 11, 2000, Mother filed a motion to set aside for lack of jurisdiction, based upon the fact that there was still pending Father's motion for change of judge. A hearing on the motion to set aside for lack of jurisdiction was held on August 17, 2000. The court denied the motion. Mother argues in this point that the trial court was in error in doing so. Mother relies upon Rule 51.05 in support of her argument on this point. Rule 51.05 states in relevant part:

(a) A change of judge shall be ordered in any civil action upon the timely filing of a written application therefor by any party. For purposes of this Rule 51, motions to modify child custody, child support, or spousal maintenance filed pursuant to chapter 452, RSMo, shall not be deemed to be an independent civil action unless the judge designated to rule on the motion is not the

same judge that ruled on the previous independent civil action. The application need not allege or prove any cause for such change of judge and need not be verified.

\* \* \*

(c) A copy of the application and notice of the time when it will be presented to the court shall be served on all parties.

\* \* \*

(e) The judge promptly shall sustain a timely application for change of judge upon its presentation. The disqualified judge shall transfer the case to a judge stipulated to by the parties if the new judge agrees to take the case. If the case is not so transferred, the disqualified judge shall notify the presiding judge[.]

\* \* \*

We note from our review of the legal file and the briefs that the motion for change of judge was filed simultaneously with the filing of the motion to modify. The motion for change of judge is a one-sentence generic motion that makes no reference to the identity of the judge that the movant sought to remove from presiding over the case. The dissolution case had been presided over by the Honorable Stephen K. Griffin. There is nothing in the record to indicate that some other judge had been designated to preside over the motion to modify. Assuming, however, that Father's counsel intended to file a motion to disqualify Judge Lewis, it could be argued

that the subsequent action of Father's counsel in informing Judge Lewis that he should retain the case may have constituted a withdrawal of the motion before the motion was "presented" pursuant to Rule 51.05. However, we need not decide that issue because we fail to see that Mother, who did not file the motion in the first place and then objected to reassignment of the case at a docket call, had standing to raise the issue after the judgment was entered. Mother presents no authority for the proposition that she has standing to raise the issue at this point in the proceeding. Accordingly, Point I is denied. We have jurisdiction.

## Point II: Insufficient Evidence of a "Substantial, Continuing Change of Circumstances"

Mother argues, in this point, that the trial court erred in granting a change of custody because the ruling was against the weight of the evidence in that there was not sufficient evidence presented to establish a substantial, significant and continuing change of circumstances as required by § 452.410, RSMo.[1]

Mother argues that, pursuant to *Haus–Gillespie v. Gillespie*, 998 S.W.2d 842 (Mo. App.1999), before there can be a change in the physical custody of a minor child, the change must be in the child's best interest, and there must be a "substantial and continuing" change of circumstances as to the child or the custodian. Even upon a showing of a change of circumstances, the court cannot transfer custody unless the change is shown to be "significant." *McCreary v. McCreary*, 954 S.W.2d 433 (Mo.App.1997).

---

1. Section 452.410 states, in relevant part:
   1. Except as provided in subsection 2 of this section, the *court shall not modify* a prior custody decree *unless* it has jurisdiction ... and it finds, upon the basis of facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that *a change has occurred in the circumstances of the child or his custodian* and that the *modification is necessary to serve the best interests of the child....*

Mother argues that such was not the case here, in that the bulk of Father's evidence concerned the allegation of an infestation of head lice on the child. Father's witnesses claimed that the child suffered from head lice "all the time." Father's evidence was also that the child "always" had a runny nose and fever. Both complaints were offered to show, according to Mother, that Mother was neglectful and that the child's health was threatened as a result of her neglect. Mother denied the allegations, and it was not disputed that Mother called Father and asked him to take the child to the doctor for treatment. Father also admitted that he carried health insurance on the child, but failed to inform Mother of that fact.

With regard to the allegation of a continuous infestation with head lice, Mother denied Father's allegations that the child suffered from head lice for a continuous fourteen-month period. She states that the child was infected on only two separate occasions and that both infestations were treated. Mother testified that it was not possible for the child to have had head lice "every time" she goes to visit Father, because the day care she attends regularly checks for head lice and would have notified her if it were a problem. Furthermore, the day care would not have accepted the child if she had had head lice on the continuous basis that Father alleges.

With regard to Father's allegations of Mother's neglect of the child's medical needs, Mother testified that she asked Father to take the child to a specialist (apparently because of an infection in her tonsils) because Mother's Medicare would not provide coverage for the specialist and Mother was not informed that Father was carrying private health insurance coverage on the child. Mother testified that she did

take the child to have a hearing test and introduced the results of the test at trial.

Father testified concerning a short period when Mother had denied him visitation in violation of the custody arrangement. Mother testified that she did so because the last time Father had visitation, Father refused to return the child to her at the end of his visitation period, and she and her mother had to physically remove the child from his home. Mother again allowed visitation with Father before this matter went to court, and she testified that she would have no objection to returning to the previous visitation arrangement if she were assured that the child would be returned to her at the specified time.

With regard to the allegations of lack of heat and water in her home, Mother testified that the water line had frozen and it took "a couple of weeks" to get someone to repair it, but that her mother lives within fifty feet of her house and that they have well water. As to the lack of heat, Mother stated that her furnace was out for a week and a half, but that part of that time the child was in the custody of Father and that they used space heaters and the oven to heat the house until she could get a new furnace.

With regard to Father's allegations that the child is dirty and smelly, Mother testified:

Q (by Ms. Puckett): How often do you wash her hair?

A Every time she's in the tub. I do it every other day. In the summer everyday. It's hot and humid.

Q Were you aware that when she gets to her father at the beginning of the visitation she starts cleaning herself off?

A No, I think—because Shennel has told me that when she gets-when they get her the first thing he does is strip

her down and change her clothes and take off the clothes I put on her. Why would you want to tell a three-year-old that her clothes are trash. She's three years old and not dirty. I'm not dirty. My home is not dirty.

Mother's testimony regarding her drinking habits and the child's exposure to unhealthy environments went as follows:

Q (by Mr. Arnold): How often do you go out?

A I like to go out when I can on Friday night.

Q Can you give us some idea how much you drink daily or a week or—

A When I can go out on the weekend I don't know how much I drink, not to get smashed but socialize.

Q Now, in re-hab was that drug re-hab or alcohol?

A Alcohol re-hab.

Q Now, did you learn from re-hab that it would not be wise for you to drink alcohol?

A When I went to re-hab it was—and I stayed the whole time and learned a lot. It wasn't just drinking that was my problem. I was depressed. Our marriage was splitting up. We were losing our home and I had no income at the time because I was laid off and was pretty darned depressed.

\* \* \*

Q (by Ms. Puckett) Ma'am, the VFW in St. Joe that you frequent, you take Shennel there?

. . . .

A Yes, I have. On Friday nights they have supper. On Friday nights they have to be out there by 7:00, and she's not allowed to play pool. . . . .

. . . .

Q How often were you taking her there?

A Probably once a month I take her but not lately.

Q Would you drink when they are there?

A Yeah, but I never—when she would go we go there it's my night out if she's not at dad's and I'm out then my sister-in-law comes and gets her.

. . . .

Q You pick her up from day-care and take her to the bar?

A Well, not everyday.

Q Do you think that's appropriate?

A It's not that kind of place. There's kids there. They do things in there. It's a family deal. It's VFW. It's not a bar bar. It's VFW. There is a difference between VFW and a rowdy tavern.

In her brief, Mother argues that a curable infestation of head lice or a runny nose hardly qualifies as a substantial and continuing change in circumstances. Mother asserts that there was simply no evidence of any significant or substantial change of circumstances so as to warrant a change of custody. Furthermore, the change would not be in the child's best interests, Mother contends, because Father has shown that he will use his position as primary custodian of the child to retaliate against Mother, *e.g.,* screening the child's phone calls and retaining custody when not authorized as a means of showing his displeasure with Mother.

Mother argues also that not only was there no significant and continuing change of circumstances, but also points out that any change in physical custody must be in the child's best interests. *Haus–Gillespie,* 998 S.W.2d at 846. Mother also points out that while Father alleged that he was a concerned and caring parent, he routinely drove without a valid driver's license; had

health insurance on the child but failed to disclose its existence to Mother; had the child's hearing tested and failed to inform Mother; screened telephone calls to prevent Mother from speaking with the child; admitted to having been convicted of driving while intoxicated while denying any other convictions, and later admitted to having been convicted of driving while suspended; and refused to return the child to her Mother after his visitation period had ended.

Father concedes that, pursuant to § 452.410.1, before the court can grant a change of custody of a minor child, it must find that it is in the child's best interest and that there has been a substantial and continuing change of circumstances as to the child or the custodian. *Bomar v. Kurtz,* 951 S.W.2d 657, 660 (Mo.App.1997). He points out, however, that if the change in circumstances is of such a nature that the child would "substantially benefit" from a change in custody, then a change in custody is warranted. *McCreary,* 954 S.W.2d at 439.

Father argues that, here, the child would "substantially benefit," in that the head lice infestation, lasting from April 1999 until June 2000, is without excuse. Father states that he presented further evidence of Mother's neglect by showing that: (1) she failed to have the child's hearing problems diagnosed or treated; (2) she failed to keep the child clean; (3) she failed to provide suitable living conditions for the child (citing the temporary lack of heat and running water in Mother's house); (4) she failed to refrain from consuming alcohol despite having been treated for alcohol abuse; (5) she took the child to the bar she frequented; and (6) she failed, in general, to provide the child with a stable life.

■ "A parent's failure to provide proper medical care can . . . equate to a change of circumstances sufficient to justify custody modification." *Guier v. Guier,* 918 S.W.2d 940, 948 (Mo.App.1996). Father concludes that based upon the foregoing, the court's decision to remove the child from Mother's custody was certainly in the child's best interest. At trial, the GAL agreed that a change in custody was warranted, stating:

> MR. ARNOLD (the GAL): . . . . I'm sure the Court notes my frustration when I've never been able to visit with the child that the Court appointed me to represent, but I'm left with making a recommendation to the Court with the information that I have at my disposal as guardian ad litem and if that's the way, so be it. My own view is that either of these parents are going to need a lot of help in raising this child. Neither are without blame but the controls of the visitation and the manipulation that appears to me to result in failure to serve the best interests of the child to put aside and cooperate rests principally on their shoulders. I am confident with the information that I have that a change of custody would be warranted and would serve the best interest of the child. That's my recommendation.

In granting Father's motion to modify, the court stated:

> THE COURT: All right. The Court finds that facts have arisen since the prior decree which demonstrate a change has occurred in the circumstances of the child; that modification is necessary to serve the best interests of the child. The Court orders that the actual custody of the minor child be placed with [Father]. The Court finds that unsupervised visitation by [Mother] is not in the best interests of the child; that such unsupervised visitation would endanger the child's physical health. The Court orders that [Mother] be

granted reasonable supervised visitation by the Division of Family Services but no such visitation shall occur in [Mother]'s home or place of residence. The Court orders that [Mother] shall pay to [Father] for the support of the child the sum of $180.67 per month beginning this date.... [Father] is ordered to provide medical insurance for the minor child and each party is ordered to pay one-half of any uninsured medical expense.... [C]osts taxed to [Mother]....

In *McCreary*, relied upon by Father, the court reversed the trial court's modification of a custody order because it agreed with the mother's argument that there was insufficient evidence for the court to have found a substantial and continuing change of circumstances. *McCreary*, 954 S.W.2d at 439. The alleged changed circumstances in that case were that the mother was leaving the children unsupervised while she worked, that the children had been residing with the father for an extended period of time (contrary to the custody agreement), and that the children's grades had been suffering while in the mother's care. *Id.* at 440. In reversing the trial court's judgment, the court stated:

> [I]n a case of modification, such as in the instant case, as opposed to an original determination of custody, before a trial court can make the decision who should have custody in order to best serve the interests of the children, it must first be presented with a sufficient evidentiary basis for finding a change in circumstances as required under § 452.410.1. In the case at bar, although the record supports a finding of some changes in circumstances of the children and custodian since the previous decree of custody, we find the record does not support a finding of a substantial and continuing change in circumstances warranting modification.

*Id.* at 447 (citations omitted).

In *McArthur v. McArthur*, 982 S.W.2d 755 (Mo.App.1998), the court found that allegations that the child repeatedly was found to have head lice, and that the child had resided in a camper with no electricity or running water, sufficiently alleged neglect so as to mandate the appointment of a guardian ad litem for the child. Another case in which a head lice concern appeared is *Nichols v. Ralston*, 929 S.W.2d 302 (Mo.App. S.D.1996). There the trial court had restricted the father's visitation with his daughter because, *inter alia*, the child became infested with head lice while in father's care on more than one occasion. *Id.* at 307. The court found that the problem with the head lice did not in itself constitute a substantial and continuing change of circumstances that would warrant altering the father's visitation with his daughter, where the guardian ad litem testified he believed the father could effectively clean his house to eradicate the lice. *Id.* The *Nichols* court did observe, though, that modification may be justified in the future if the child "continues to get head lice while in Father's custody." *Id.* Thus, the issue with head lice is similar to other matters of hygiene, in that occasional manifestations of problems are not viewed the same as chronic manifestations. In a child custody case, more so than in other civil cases, the appellate court gives great deference to the trial court's decision as to who should be awarded custody. *Guier*, 918 S.W.2d at 946. A "great deal of caution should be exercised in considering whether a judgment should be set aside on the ground that it is against the weight of the evidence, and only then upon a firm belief that the judgment of the trial court was incorrect." *Id.* We are reluctant to disturb

the trial court decision in any case. Here, our review is hindered because it is unclear which of the several areas of concern motivated the trial court's order. Thus, we find ourselves overlapping with Mother's third point, in which she argues that the trial court erred in failing to set out specific written findings as to why a change of custody was warranted. Mother, relying on *Haden v. Riou*, 37 S.W.3d 854 (2001) states that the court must enter specific findings related to the factors set forth in § 452.75.2 with regard to the change of circumstances. Actually, the statutory factors relate to the "best interests" of the child and not to the change of circumstances. *See Haden*, 37 S.W.3d at 860–67. In any event, because we agree that our review would be assisted by specific findings, not only as to the best interests of the child but also as to the change of circumstances, we will remand the case for the trial court to adopt specific findings concerning the change of circumstances and also as to the factors indicating that a change of custody is in the best interest of the child.

 We note also that the court denied to the mother the right of unsupervised visitation. The court gave no specific reason for this order. We agree with the observations of the guardian ad litem that both parents need significant help in parenting. However, we did not see a basis in the record for a ruling limiting Mother to visitation supervised by DFS. The record provides no indication that DFS is already involved with this child. The court should be able to find a way to address specific concerns by appropriate orders, without limiting Mother to supervised visitation. On remand, the court should delete this portion of the decree unless the court discerns that such an order is necessary, and the court furnishes a specific reason for such an order.

## Conclusion

We remand the case to the trial court for the purpose of adopting specific findings after reconsidering the record, and for such other proceedings as are not inconsistent with this opinion.