

# In the Missouri Court of Appeals
## Eastern District

### DIVISION TWO

| | | |
|---|---|---|
| DUSTYN TIENTER, | ) | No. ED101752 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of Lincoln County |
| vs. | ) | |
| | ) | |
| ANGELA (RUE) TIENTER, | ) | Honorable David Craig Mobley |
| | ) | |
| Appellant. | ) | Filed: February 23, 2016 |

### INTRODUCTION

Angela (Rue) Tienter ("Mother") appeals the trial court's judgment denying her motion to modify the 2007 judgment and decree of dissolution of marriage between Mother and Dustyn Tienter ("Father"). In her motion to modify, Mother sought sole legal custody and joint physical custody of the children, D.T. and L.T. She also requested the court award Father visitation and order him to pay reasonable child support. The court found there had not been a substantial change in circumstances warranting modification. On appeal, Mother alleges the trial court erred: (1) in denying her motion to modify legal and physical custody; (2) in failing to modify the visitation schedule; and (3) in failing to award Mother child support in the event she should have been awarded physical custody. We reverse the judgment and remand the case to the trial court.[1]

---

[1] Only Mother filed a brief in this matter. Although there is no penalty for failure to file a brief, this court must adjudicate Mother's claim without the benefit of whatever argument, if any, Respondent Father could have made in response. *Risch v. Risch*, 72 S.W.3d 274, 276 (Mo. App. S.D. 2002).

# I.     FACTUAL AND PROCEDURAL BACKGROUND

Mother and Father were married in 2000. During the marriage, they had two children, a son, D.T., and a daughter, L.T. ("the children"). D.T. was born in 2000 and L.T. was born in 2002. In April 2007, the trial court entered a judgment dissolving the parties' marriage. The dissolution judgment awarded the parties joint legal custody of the children, awarded Father sole physical custody of the children, and awarded Mother visitation. Mother had the children every other weekend during the school year. A different visitation schedule was set forth for the summer months, giving Mother more time with the children. Neither party was ordered to pay child support.

In 2013, Mother filed a motion to modify custody and support. Mother claimed there had been a substantial change in circumstances warranting a modification of the original custody arrangement. In her motion, Mother sought sole legal and joint physical custody of the children, with visitation awarded to Father every other weekend and overnight on Wednesday and Thursday on the weeks when Father did not have the weekend overnight. Mother also asked the court to order Father to pay her reasonable child support.

In January 2014, the trial court held a hearing on Mother's motion to modify. The court heard testimony from Mother, Father's parents−Fran and John Tienter ("Grandparents"), Father and his new wife, Evelyn Tienter ("Evelyn").[2] In addition, the court interviewed L.T. and D.T. *in camera*. The following evidence was presented at the hearing.

## A.  Father's Job and Marital Changes

Father was employed with the police department; his schedule required him to work shifts from noon until midnight. After the parties' 2007 dissolution, Father obtained a second

---

[2] Throughout the opinion, we refer to Evelyn Tienter by her first name. We intend no disrespect, but omit her last name simply to facilitate the reading and understanding of the opinion.

job and he worked significant overtime hours each month at the police department. As a result of Father's work schedule, the children spent three to four nights a week with their paternal Grandparents.

After Father began dating and living with Evelyn, the children began spending more time at Father and Evelyn's home. Evelyn also worked two jobs—a full-time position and a part-time position in the evening. Therefore, the children at times were under the supervision of Evelyn's teenage son. After living together for a few years, Father and Evelyn married in 2013.

## B. The Children's Relationship with Evelyn

Mother and Grandparents testified that they had concerns Evelyn was mistreating the children. Mother stated that L.T. became upset and cried when Mother dropped her off at Father and Evelyn's home. Both Grandparents also noted the children became upset when they had to go to Father's home. In addition, Grandmother reported seeing bruising on L.T.'s arm when she was 8; Grandmother stated L.T. indicated Evelyn had punched her. Grandfather testified that he felt the situation in Father's home was causing the children to be depressed. He confirmed he saw bruising on L.T.'s arm.

Additionally, Grandfather recounted that L.T. told him about an incident where Evelyn tried to put an earring in L.T.'s ear and smothered L.T.'s face in a pillow while L.T. screamed. The incident was witnessed by D.T. Father testified he was called home from work after the incident happened and saw scratches on Evelyn. Neither Father nor Evelyn denied the incident occurred. Rather, Evelyn testified that she "ended up on top" of L.T. L.T. reported she was "freaking out" and the incident made her uncomfortable because she was afraid it would happen again, except "without an earring."

L.T., Father and Evelyn all testified L.T. had been disciplined in Father's home in various ways: by Evelyn spanking her, by having her door removed from the hinges, by having her books taken away, and by having to clean tile with a toothbrush. Father could not recall what L.T. did to warrant being punished. He maintained, however, that the discipline was appropriate.

Grandparents approached their son regarding the children's relationship with Evelyn. Grandparents testified that when things did not improve, they discussed the situation with Mother, who then contacted Father after speaking with L.T. and D.T. Mother indicated she hotlined the alleged abuse, but after a home visit the allegations were found to be unsubstantiated. L.T. and D.T. wrote Father a letter explaining they did not want to be alone with Evelyn. Evelyn found the letter and told Father about it.

## C. The Children's Hygiene and Medical Care

Evidence was presented regarding the children's hygiene and medical care. Grandparents claimed L.T. and D.T. were going to school in dirty clothing. Moreover, L.T., who is four years younger than her stepbrother, wore his clothing to school one day. Father admitted the children had gone to school several times wearing the clothes that they slept in. In addition, Grandparents and Mother claimed that they noticed the children were not showering regularly. Grandparents purchased shampoo, conditioner, deodorant, toothbrushes, and toothpaste for the children to use. Father acknowledged his parents had bought these items, but he stated that supplies were available at home. Father also stated he was aware D.T. had been counseled by the school nurse regarding his hygiene and body odor. Both Father and Evelyn acknowledged D.T.'s clothes had been soiled by animal feces; seven cats and two dogs lived in their home.

In relation to their medical care, Father acknowledged he had not taken the children to the dentist since the divorce in 2007. Father explained he felt the children's school would have

4

notified him if there was a need for dental care. Father also testified that the school informed him L.T. and D.T. needed glasses, but he did not take them to the eye doctor. Instead, Mother helped the children obtain their glasses. Father further acknowledged L.T. had been sent to school several times without her glasses and that D.T had worn broken glasses for two weeks during the time of Father's wedding.

In addition to providing for the children's routine dental and eye care, Mother testified she took D.T. to a podiatrist because he had been suffering from a painful, ingrown toenail. Father conceded D.T.'s condition was ongoing and Father had not sought medical care to treat it. Father testified that he flushed the pain medicine prescribed to treat D.T.'s condition down the toilet because it was not contained in the prescription bottle. Also, Father admitted D.T. had struggled with acne for over a year. Father testified he did not take D.T. to a dermatologist, but instead treated his acne with over-the-counter remedies. Evelyn added that D.T.'s acne problem had persisted for over three years and was not getting any better.

During 2013, L.T. had experienced stomach pain, nausea, and weight loss. Mother took her to a physician who prescribed medication for L.T. Father explained he did not take L.T. to a doctor for her symptoms as he did not feel her weight loss was significant.

**D. Custody of the Children**

When the court interviewed the children *in camera*, L.T. and D.T. indicated they wanted to live with Mother. Both children claimed the situation had improved at Father's home. D.T. clarified things had only gotten better, though, since Mother had sought the modification. While L.T. stated she had worked past issues and felt "safe" at Father's home, she also testified she was "on edge" and felt a false sense of security there, like something could happen to her "at any minute." With regard to interacting with Evelyn, L.T. acknowledged she had probably done

some "stupid things." When asked his opinion on custody, Father stated he did not see any reason why the court should change things, but he also testified he felt the most important consideration in determining custody should be the children's wishes.

### E. Trial Court's Judgment and Appeal

Following the hearing, the court entered its judgment denying Mother's motion to modify custody and support. The court stated it considered the testimony of each witness and "accepted some of the testimony of the witnesses as creditable and rejected other parts of the testimony as not creditable." However, the court did not specifically reference any testimony or evidence presented at trial. Instead, the court generally noted that its judgment was "consistent with the Court's determination of the creditability [sic] of the evidence and of the witnesses." The court then concluded there had not been a substantial change in circumstances warranting a modification of the 2007 judgment of dissolution. Thus, the court did not modify the visitation schedule or award Mother child support.

Mother filed a motion to amend the judgment or, alternatively, for a new trial. She argued the court's finding that there was no substantial change in circumstances was against the weight of the evidence and not supported by credible evidence. Pursuant to Rule 78.06,[3] the motion was overruled by operation of law when the court did not rule on it within 90 days after it was filed. Mother appeals.[4]

---

[3]All rule references are to Missouri Court Rules (2014). Rule 78.06 provides: Any motion for new trial, motion to amend the judgment or opinion, or motion for judgment notwithstanding the verdict is overruled for all purposes if the trial court does not rule on it within ninety days after the date the last such timely motion is filed.

[4] Father filed with this court a motion to remand the cause to the trial court for further findings and orders.

## II. STANDARD OF REVIEW

On appeal, the trial court's judgment will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Jansen v. Westrich*, 95 S.W.3d 214, 217-18 (Mo. App. S.D. 2003) (citing *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976)). "We will not reverse the trial court's judgment on the basis that it is against the weight of the evidence unless we have a firm basis for concluding that the judgment is wrong or that it is against the logic of the circumstances." *Clayton v. Sarratt,* 387 S.W.3d 439, 444 (Mo. App. W.D. 2013) (internal quotation omitted). "When there is conflicting evidence, the trial court has the discretion to determine the credibility of witnesses, accepting all, part, or none of the testimony it hears." *McCreary v. McCreary*, 954 S.W.2d 433, 439 (Mo. App. W.D. 1997) (internal quotation omitted).

## III. DISCUSSION

### A. Father's Motion to Remand

Before considering the merits of Mother's claims of error on appeal, we will address Father's motion to remand for further findings and orders. Father asks this Court to remand the cause to the trial court to set out the required basis for its findings. Father did not file a respondent's brief; instead, he filed a "reply to appellant's brief" in which he reiterated his allegation that the judgment lacked the required details and again requested remand. Father alleges that the judgment's failure to set out findings does not properly comport with case law, and Mo. Rev. Stat. § 452.375.6 and § 452.375.2.[5]

First, we note that Father did not properly preserve his claim that the trial court failed to make the required findings by raising it in a motion to amend the judgment pursuant to Rule

---

[5] All statutory references are to RSMo 2000 as supplemented, unless otherwise indicated.

78.07(c).[6] *See Cule v. Cule*, 457 S.W.3d 858, 863 (Mo. App. E.D. 2015) (Wife waived for appellate review her challenge to trial court's alleged failure to make statutorily-mandated findings regarding the best interests of the children, where wife failed to address the issue in her motion to amend the judgment). Nevertheless, we will address Father's motion in order to clarify certain statutory requirements related to the modification of custody.

Here, the court found there was no substantial change in circumstances. To determine whether a modification of custody is warranted, a trial court is required to find a change in circumstances pursuant to § 452.410.1. The finding of a change in circumstances is a threshold matter; *if* the trial court finds that a change of circumstances has occurred, then the court must take the additional step of determining whether a modification to the prior decree is in the child's best interests. *Prach v. Westberg*, 455 S.W.3d 513, 517 (Mo. App. W.D. 2015). In considering whether a modification of custody is in a child's best interests, the court is guided by § 452.375.

Secondly, Father alleges that pursuant to § 452.375.2 and § 452.375.6, the trial court was required to issue written findings setting forth a detailed basis for its judgment. Section 452.375.6 provides that if the parties have not agreed to a custodial arrangement, then the court *shall* include written findings in the judgment based on each of the factors listed in § 452.375.2. *M.P.P. v. R.R.E.*, 456 S.W.3d 69, 71 (Mo. App. E.D. 2015). However, these factors relate to a determination of whether custody is in the *best interests* of the child and not to the threshold issue of whether there was a change in circumstances warranting modification of custody. *See Parker v. Parker*, 66 S.W.3d 778, 787 (Mo. App. W.D. 2002). Because the court found no substantial change in circumstances, the additional step of considering whether the proposed

---

[6] Nor does Father allege that either party requested the court make findings pursuant to Rule 73.01(c).

modifications were in the best interests of the children, according to the factors listed in § 452.375.2., was not required.

Likewise, § 452.410.1 does not require written findings when determining the threshold issue of whether modification is warranted due to a change in circumstances. § 452.410.1; *See Wood v. Wood*, 391 S.W.3d 41, 46 (Mo. App. W.D. 2012) ("Although Section 452.410.0 required the court to find a change of circumstances before it could modify the parties' parenting time, the statute did not require the court to make written findings identifying the facts that constituted the change of circumstances.").

Finally, in his motion, Father argues the judgment does not comport with case law. Father cites to the following three cases in support of his argument: *M.P.P v. R.R.E*, 456 S.W.3d 69 (Mo. App. E.D. 2015); *Jett v. Jett*, 468 S.W.3d 382 (Mo. App. S.D. 2015); and *Buchanan v. Buchanan*, 167 S.W.3d 698 (Mo. banc 2005). These cases are not instructive. All three involve the appeal from an original custody decree where the court was required to determine the best interests of the child and set forth written findings based on the factors listed in § 452.375.2. These cases do not involve a modification of custody. Here, in contrast, the issue involves a motion to modify the court's prior custody decree where the parties agreed to the custodial arrangement. Thus, even assuming, *arguendo*, that Father had preserved his claim, we find no merit in his assertions and deny his motion to remand.

### B. Substantial Changed Circumstances

Here, Mother argues three points of error on appeal. We do not address Points II and III as Point I is dispositive. In Point I, Mother asserts the trial court erred in denying her motion to modify legal and physical custody. Specifically, Mother argues the court erred in finding there had not been a substantial change in circumstances warranting a modification. Mother contends

she proved by competent evidence that there had been a substantial change in circumstances. In other words, framed within our standard of review, Mother essentially argues the trial court's judgment was against the weight of the evidence. This Court must exercise extreme caution in setting aside a judgment as against the weight of the evidence and will do so only upon a firm belief that the judgment was wrong. *See Scherder v. Sonntag*, 450 S.W.3d 856, 860 (Mo. App. E.D. 2014). We hold that firm belief here.

Section 452.410.1 provides the standard for modifying a prior custody decree. Section 452.410.1 states that a court shall not modify a prior custody decree unless it finds a change has occurred in the circumstances of the child or her custodian and that modification is necessary to serve the child's best interests. § 452.410.1. Thus, finding a change in circumstances is a threshold matter. Moreover, the type of custody modification requested determines the nature of the change in circumstances required. If a movant seeks a drastic change in the custodial arrangement, then a substantial change in circumstances is required. *Russell v. Russell*, 210 S.W.3d 191, 197 (Mo. banc 2007). *See also Prach*, 455 S.W.3d at 516 ("If a motion to modify seeks to change the 'custody' of the children, for example, from joint legal or physical custody to sole legal or physical custody or from sole custody in one parent to sole custody in the other parent, the 'change in circumstances' must be substantial."). In contrast, if a motion to modify seeks only changes in terms related to the custody arrangement, such as a change in the parenting time schedule, the plain language of the statute controls and the change in circumstances need not be substantial. *Prach*, 455 S.W.3d at 516.

Here, the 2007 dissolution decree granted the parties joint legal custody of the children and awarded sole physical custody to Father. Mother now seeks sole legal and joint physical

custody of the children. Thus, the modification sought by Mother was a drastic change that required a finding of a substantial change in circumstances.

Missouri appellate courts have considered several factors to determine whether a substantial change in circumstances has occurred. Two factors relevant to this case are Father's change in employment and marital status. *McIntosh v. McIntosh*, 400 S.W.3d 860, 863 (Mo. App. E.D. 2013) (Changes in employment and marital status are substantial changes that can support modification of a child custody order). *See, e.g., Wilson v. Wilson*, 873 S.W.2d 667, 670 (Mo. App. E.D. 1994).

Here, Father obtained a second job after the divorce, worked significant overtime hours at the police department, and changed his marital status. It is uncontested that these changes resulted in the children spending less time with Father and more time with Grandparents and Evelyn. There was evidence from Mother, Grandparents and the children that L.T. and D.T. were mistreated by Evelyn while in her care. Due to these circumstances, the children wrote Father a letter indicating they did not want to be alone with Evelyn.

Two other important factors considered in determining whether a substantial change in circumstances has occurred are the disregard of a child's hygiene needs and medical care. *Parker*, 66 S.W.3d at 783-85. Mother and Grandparents testified that Father neglected the children's hygiene as the children wore inappropriate and dirty clothing to school and did not shower regularly. Grandparents testified that they purchased toiletries for the children to use at Father's home. Mother and Grandparents also testified that Father failed to address the children's medical needs. Father did not take the children to the eye doctor and had not taken the children to the dentist since 2007. Father also failed to properly address other medical needs of the children. Instead, Mother obtained medical treatment for L.T. and D.T.

We recognize that the trial court has the discretion to determine the credibility of witnesses' testimony, accepting all, part, or none of the evidence it hears. However, even if the trial court found the conflicting testimony presented by Grandparents, Mother, and children not credible, we still find the record provides overwhelming evidence of a substantial change in circumstances. Father's admissions alone conclusively establish a substantial change in circumstances. Father is bound by his own testimony where it constitutes a judicial admission. *Dawson v. Dawson*, 366 S.W.3d 107, 115 (Mo. App. W. D. 2012). A party's testimony in court may amount to a judicial admission if the party testifies unequivocally and understandingly to a material fact within his own knowledge. *Rodgers v. City of St. Louis*, 688 S.W.2d 42, 43 (Mo. App. E.D. 1985).

Father testified unequivocally and understandingly to several material facts. Father stated he took an additional job after the divorce and worked overtime. He acknowledged this resulted in the children spending much less time with him and often being with Evelyn. He acknowledged an incident where he had to leave work and come home because of an altercation between L.T. and Evelyn—and that he saw scratches on Evelyn. Father confirmed L.T. was disciplined in the following ways: by having her door removed from the hinges; by having her books taken away; by having to clean tile with a toothbrush; and, by being spanked by Evelyn. The evidence indicates Father's additional employment and change in marital status impacted the time Father spent with the children, and that the children's relationship with Evelyn was precarious at best.

As to the neglect of the children's hygiene needs, Father acknowledged the following: that the children went to school in clothes they slept in; that L.T. had worn her 4-year-older

stepbrother's clothing to school; that D.T had animal feces on his clothing; and, that D.T. had been counseled at school regarding his hygiene and body odor.

Moreover, with respect to the children's medical care, Father testified: that he had not taken L.T. or D.T. to the dentist since the divorce; that he did not get glasses for the children even after the school informed him that the children needed them; that L.T. went to school several times without her glasses; that D.T. wore broken glasses for two weeks; that Father did not obtain treatment for D.T.'s ingrown toenails or acne; that Father flushed D.T.'s medicine down the toilet; and, that Father did not take L.T. to the doctor for her stomach problems and weight loss. "A parent's failure to provide proper medical care can . . . equate to a change of circumstances sufficient to justify custody modification." *Guier v. Guier,* 918 S.W.2d 940, 948 (Mo. App. W.D. 1996).

In some instances, Father placed little or no significance on the children's medical needs. Father offered excuses for his delays in obtaining treatment for the children. However, he provided no evidence he properly cared for the children on other occasions and that the incidents he testified about were just aberrations. We find that the evidence establishes the children's medical and hygiene needs were not being properly met by Father.

Thus, the testimony adduced at the hearing establishes a substantial change in circumstances. Even if no single factor discussed above would have alone established changed circumstances, the combination of the factors clearly does. *Johnson v. Johnson*, 758 S.W.2d 721, 725 (Mo. App. W.D. 1988); *In re Marriage of Scobee*, 667 S.W.2d 467, 470 (Mo. App. S.D. 1984) (a combination of individually insufficient factors may establish changed circumstances).

Furthermore, in contrast to the substantial evidence presented of changed circumstances, our review of the record reveals very little evidence in *support* of the trial court's judgment. The evidence in favor of the judgment is as follows: the children generally stated that things had improved in Father's home recently; some of L.T.'s testimony downplayed the difficulties that arose between her and Evelyn; Father and Evelyn denied allegations that Evelyn mistreated the children; Father and Evelyn maintained that L.T. had been disciplined appropriately; Mother's hotline allegation of abuse was deemed unsubstantiated; and, Father claimed toiletries were available at his home to meet the children's hygiene needs.

We find this limited of evidence in favor of the judgment is not sufficiently probative when considered in the context of the totality of the evidence presented, particularly Father's testimony. As a result, the trial court's finding of no change in circumstances was against the weight of the evidence and against the logic of the circumstances.

Although we find the threshold requirement of a substantial change in circumstances has been met, in order to modify custody, the trial court must further determine whether modification is in the children's best interests. Here, the trial court did not make such a finding.[7] Therefore, we reverse and remand for a determination of whether a modification of custody is in the children's best interests and to set forth its specific findings in accordance with § 452.375.2. Point I is granted. Because we remand, we need not address Points II and III, which seek

---

[7]We note that although the trial court found no substantial change of circumstances warranting modification and denied Mother's motion on that basis, the court's written judgment contains an additional finding, sans analysis, that it considered all relevant factors set forth in § 452.375.2. As noted earlier these factors are used to determine whether a modification is in a child's best interest. While the court did note in a cursory fashion that it considered the factors, it did not discuss the factors and failed to make an explicit finding as to whether modification was in the children's best interests.

visitation for Father and child support for Mother in the event the custody arrangement is modified.

## IV.    CONCLUSION

The trial court's finding that there was no substantial change in circumstances warranting modification is against the weight of the evidence. The judgment is reversed and remanded for the trial court to determine whether modification is in children's best interests.

_____
Angela T. Quigless, Judge

Philip M. Hess, P.J., and
Gary M. Gaertner, Jr., J., Concurs.